# Eastern District of Texas
## United States District Court

**AMBERLEY LAMBERT,**
**PLAINTIFF**

**VERSUS**

**CITY OF ONALASKA TEXAS;**
**ONALASKA POLICE DEPARTMENT;**
**ONALASKA ELEMENTARY SCHOOL;**
**OFFICER TAMMIE HEETH.**
**DEFENDANTS**



9:23cv67
Crone/Stetson

### PLAINTIFF INFORMATION

PLAINTIFF: Amberley Mae Lambert, is a citizen of the United States who presently resides at the following address:

ADDRESS: 1062 Hanson Rd. Onalaska, Tx 77360
TELEPHONE: 281-432-8260
EMAIL: amberley.lambert2@gmail.com

### DEFENDANT(S) INFORMATION

DEFENDANT: City of Onalaska, Texas
ADDRESS: 372 South FM 356 Onalaska, Tx 77360

DEFENDANT: Onalaska Police Department
ADDRESS: 372 South FM 356 Onalaska, Tx 77360

DEFENDANT: Onalaska Elementary School
ADDRESS: 391 Old Trinity Rd. S, Onalaska, Tx 77360

DEFENDANT: Officer Tammie Heeth
ADDRESS: 767 Indian Hill Blvd. Livingston, Tx 77351

# AFFIDAVIT

I, Amberley Mae Lambert, of Onalaska, in Polk County Texas, MAKE OATH AND SAY THAT

1. On the morning of March 30, 2021; Lambert went to the Onalaska Elementary School and made a verbal complaint to the Assistant Principal Larissa Grubbs about Tammie Heeths actions towards Lambert that morning.

2. When Grubbs and Lambert spoke Grubbs stated that many people have had issues with Heeth and to resolve the issue Grubbs suggested entering the school zone from the road across from Brookshire Brothers so as to avoid Heeth and any additional altercation that may arise. Lambert responded saying that was a good idea; however, Lambert's vehicle would not take the sharp turn to enter into the driveway from that direction because the driveway was not designed to flow traffic the opposite way.

3. Lambert stated that Grubbs was very kind and understanding of Lambert's complaint. Lambert also stated that Grubbs took time to listen to her concerns and Grubbs tried to offer Lambert a resolution with the least amount of resistance as possible since both parties knew about Heeth's previous history with complaints from other parents.

4. On April 1, 2021, at approximately 7:47 am, Lambert was driving south on 356 headed to the Onalaska Elementary School to drop off her two youngest children at the school.

5. Heeth was standing in the zipper of the roadway at the intersection of Gantry and 356. Heeth stepped in front of Lambert's vehicle as Lambert was driving past the intersection. Heeth's action forced Lambert to stop her vehicle. Heeth started punching Lambert's front driver side of the vehicle.

6. Lambert rolled down the driver window and asked Heeth "What the heck are you doing?" Heeth then proceeded to grab Lambert by the hair in an attempt to pull her through the driver window. During this struggle Heeth knocked Lambert's glasses on the driver side floorboard. Lambert was wearing a seatbelt so Heeth was unsuccessful at pulling Lambert out the window.

7. Heeth opened the driver door of the vehicle and immediately grabbed Lambert in a second attempt to pull her out of the vehicle. Lambert screamed "My car is still in drive!" so Heeth reached for the gear shifter and broke the button to engage it on the side of the shifter by forcefully trying to engage it. Lambert grabs her phone and states she is going to call 911, then Heeth immediately lets her go and steps away from her vehicle.

8. At this point an unknown woman approaches the vehicle and Heeth starts screaming "She hit me." The unknown woman was later identified as Judge Sarah Rasberry.

Rasberry pointed her finger towards Lambert and said "Shut your fucking mouth and keep your ass in that vehicle." Lambert later filed a complaint against Rasberry with the Department of Justice because she felt like Rasberry should have come to her aid instead of verbally assaulting Lambert during the incident.

9. Lambert dialed 911 and spoke to the dispatcher for a few minutes, then she hung up and waited for assistance. A few minutes later other Officers from the Onalaska Police Department arrived on scene. Lambert stayed buckled into her driver seat until Fire Marshall Jacob Chapman approached her vehicle. Chapman informed Lambert that Heeth was placing Lambert under arrest for Aggravated Assault Against a Public Servant and Resisting Arrest.

10. Chapman asked Lambert to step out of her vehicle so Lambert informed Chapman about the gear shifter situation. Lambert stated that Chapman was kind and patient while Lambert searched for her glasses and the shifter button on the floorboard of her vehicle. Once Lambert figured out how to put her vehicle in park she stepped out of the vehicle.

11. Chapman escorted Lambert to Officer Heather Thomas' patrol car. Lambert immediately asked to speak to the Chief of the Police Department. Thomas drove Lambert to the Onalaska Police Department to speak to Chief Jessica Stanton. Lambert explained to Stanton what had just happened and asked for a complaint form. Stanton gave Lambert a form in which she filled out immediately in the Onalaska Police Department.

12. On April 1, 2021 at 9:20 am, before being transferred to the Polk County Jail Lambert wrote "I firmly do believe that Officer Heeth and her actions were a complete and direct relation to a complaint I made earlier this week." Lambert also stated "Again, I firmly believe this is directly related to the complaint I made with the school earlier this week. I am asking that the video footage from both Onalaska Elementary School and the Onalaska Police Department be viewed and added to my case facts. The video footage along with a statement from the school's office clerk will verify my claim of retaliation against Officer Heeth." Lambert stated that she voiced her concerns multiple times in this statement and verbally because she wanted to be heard and have this issue properly investigated.

13. Lambert stated that Stanton should have conducted a proper investigation of both events pertaining to Lambert. Instead Stanton allowed Heeth to go directly to the Elementary School and initiate an investigation pertaining to Heeth's own actions against Lambert. Heeth had Larissa Grubbs, the assistant principal of Onalaska Tx, file a Voluntary Sworn Statement in Grubbs office on 04/01/21 at 11:05am. In Grubbs statement she writes "Officer Heeth was on campus after this conversation with Mrs.Lambert and I shared her concerns. Officer Heeth confirmed they had not had good interactions with each other".

14. On January 20, 2022 at 10:39 am, Lambert's Criminal Attorney, Seth Evans emailed Polk County D.A. Lee Hon to ask "if there is a video that contains audio from the Onalaska school that captured the meeting between the defendant and Larissa Grubbs at the front/main entrance of the school on the Monday or Tuesday before the date of the offense on 4/1/21."

15. On February 1, 2022 at 8:55 am the D.A Office responded with "Heeth and Thomas both said no. I had the Chief check with the school and the conversation took place out front and there were no recordings."

16. Lambert states that up until this point, Chief Stanton hadn't even spoken to the school about her complaint on April 1, 2021. Lambert states that it took a long time for Chief Stanton to follow up on her complaint with the school.

17. On January 12, 2022, the DA Office emailed Evans saying "Sgt. Heeth said the only videos were what was provided. Also, she was not wearing a body cam." When Lambert was told this information she immediately questioned why Heeth was in charge of collecting the video evidence. Lambert also stated that Heeth was in fact wearing her body camera on April 1, 2021. However, Lambert did not know if the camera was activated during this event. Lambert stated that Stanton and the Onalaska Police Department did not properly handle her complaint against Heeth.

18. On October 22, 2021, Rosemary Covalt put in a request for ALL documents about Heeth through the City of Onalaska. Onalaska City Attorney Chris Thompson responded to Covalt on November 1, 2021. Thompson's response was to let Covalt know that her documents were ready, but she would need to pick them up in person because there were too many pages to mail. Covalt picked up the papers and then immediately counted and numbered each page accordingly. There were 234 pages of information in that packet. The only complaint received in that packet of papers was from Lambert.

19. Covalt requested this information from the CIty of Onalaska because she knew with certainty that there have been many complaints about Heeth over the years. Covalt has several of the original complaints in her files because she was the one who originally filed them with the City of Onalaska, the Mayor of Onalaska, and the Onalaska Police Department. Covalt shared her original complaints and the packet of information she received from Thompson with Lambert. Lambert alleges that the City of Onalaska, the Mayor of Onalaska, and the Onalaska Police Department knew about the corrupt nature and behavior of Tammie Heeth dating back to nearly a decade ago.

In this action, Amberley Lambert seeks to recover damages for claims allegedly sustained by Heeth. Lambert states that Heeth evoked police misconduct under "Color of Law" by unlawfully stopping her vehicle, using unnecessary excessive force, and falsely arresting/charging Lambert on April 1, 2021.

## STATEMENT OF CLAIM(S)

### Summary of violations for which relief is sought.

**First Claim for Relief:**
First Amendment Violation - Retaliation for Speech

- Lambert alleges that Heeth violated her rights by retaliating against her because of the complaint she made with Assistant Principal Grubbs.

**Second Claim for Relief:**
Fourth Amendment Violation - Unlawful Seizure of Persons

- Lambert alleges that Heeth violated her rights by unlawfully stopping her vehicle on the roadway in front of the Onalaska Elementary School.

**Third Claim for Relief:**
Fourteenth Amendment Violation - Unlawful Arrest

- Lambert alleges that Heeth violated her rights by unlawfully arresting her in front of the Onalaska Elementary School on April 1, 2021.

**Fourth Claim for Relief:**
Penal Code 118.1 Violation - False Report/Statement

- Lambert alleges that Heeth violated this policy by writing a false report/statement about the incident.

**Fifth Claim for Relief:**
Eighth Amendment Violation - Cruel and Unusual Punishment

- Lambert alleges that Heeth violated her rights and she was punished unfairly for an act that she did not commit.

**Sixth Claim for Relief:**
Fourth Amendment Violation - Unlawful Search of Property

- Lambert alleges that the Onalaska Police Department violated her rights by unlawfully searching her vehicle.

### Seventh Claim for Relief:
Fourth Amendment Violation - Unlawful Seizure of Property

- Lambert alleges that the Onalaska Police Department violated her rights by unlawfully seizing her vehicle.

### Eighth Claim for Relief:
Property Damage - Damages to Personal Vehicle

- Lambert alleges that Heeth damaged her vehicle/personal property.

### Ninth Claim for Relief:
Bodily Injury - Physical Injury of Person

- Lambert alleges that Heeth caused personal injuries to her neck and shoulder.

### Tenth Claim for Relief:
Emotional Distress - Trauma and Stress

- Lambert alleges that she developed seizures because of the overwhelming stress of this event.

### Eleventh Claim for Relief:
Emotional Distress - Trauma and Stress

- Lambert claims that her daughter Kaylee Matlock had to receive therapy because of the overwhelming stress of this event.

### Twelfth Claim for Relief:
Emotional Distress - Trauma and Stress

- Lambert claims that her daughter Natalie Matlock had to receive therapy because of the overwhelming stress of this event.

### Twelfth Claim for Relief:
Senate Bill 158 Violation - Failure to Wear/Activate Body Worn Camera

- Lambert alleges that Heeth violated these policies by not wearing/activating her body worn camera.

**Thirteenth Claim for Relief:**
U.S Department of Justice Violation - Conflict of Interest

- Lambert alleges that the Onalaska Police Department violated these policies by allowing Heeth to conduct her own investigation.

**Fourteenth Claim for Relief:**
U.S Department of Justice Violation - Improper Investigation

- Lambert alleges that Heeth and the Onalaska Police Department violated these policies by not properly investigating her complaints.

## Legal Background Information

a. Section 1983 of Title 42 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

b. This case requires us to decide what constitutional standard governs a free citizen's claim that a law enforcement official used excessive force in the course of making an investigatory stop, or other "seizure" of her person. We hold that such claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.

c. The notion that all excessive force claims brought under this action are governed by a single generic standard is rejected. Instead, courts must identify the specific constitutional right allegedly infringed by the challenged application of force and then judge the claim by reference to the specific constitutional standard which governs that right.

d. Claims that a law enforcement official has used excessive force in the course of an investigatory stop, or other "seizure" of a free citizen are most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons against unreasonable seizures," and must be judged by reference to the Fourth Amendment's "reasonableness" standard.

e. The Fourth Amendment "reasonableness" inquiry is whether the officer's action is "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The "reasonableness" of a

    particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation.

f. The Eighth Amendment terms "cruel and unusual punishments" clearly suggest some inquiry into subjective state of mind, whereas the Fourth Amendment term "unreasonable" does not. Moreover, the less protective Eighth Amendment standard applies because of the criminal prosecutions directed towards Lambert.

g. The Texas Municipal League states that the Senate passed Bill 158 requiring all law enforcement agencies to adopt a policy for the use of body-worn cameras by September 1, 2016. The Bureau of Justice Assistance - U.S. Department of Justice states that "A department's policy should also clearly indicate what will happen to an officer who fails to activate a camera in circumstances where activation is required. Will the officer be subject to discipline? If so, how will he or she be disciplined? The consequences for failure to activate as well as premature deactivation should be clearly stated."

h. The U.S Department of Justice Office of Community Oriented Policing Services wrote the Standards and Guidelines For Internal Affairs. 2.1 Criminal complaints states "As soon as is practicable, complaints alleging possible criminal misconduct of an agency member should be separated, classified as a criminal complaint, and handled accordingly. Criminal misconduct is when there is reasonable suspicion to believe that the agency member committed a crime..... Declination of prosecution should not be the sole basis for closing the agency's administrative investigation associated with the criminal case. Because agencies typically have rules making it an act of misconduct to commit a crime, agencies should consider creating rules requiring officers arrested or named as a principal to a crime to report that to their agency's Internal Affairs or to their commanding officer. Consideration should also be given to requiring employees who know that their fellow employee has been arrested or named as a criminal principal to report that fact to Internal Affairs or to their commanding officer. "

i. The U.S Department of Justice, Standards and Guidelines For Internal Affairs, 3.0 Investigation states that "Internal Affairs should be the guarantor that every investigation undertaken by its agency of its own personnel fulfills its investigative mission. All reasonable steps should be taken to assure that every investigation is free from conflict of interest, bias, prejudice, or self interest."

In conclusion, Lambert alleges that Heeth has been acting "Under the Color of Law". The United States Department of Justice states that "The types of law enforcement misconduct covered by these laws include excessive force, sexual assault, intentional false arrests, theft, or the intentional fabrication of evidence resulting in a loss of liberty to another". Lambert states that Heeth is not above the law and does not have the right to deprive herself or anyone else the rights protected by Constitutional Laws of the United States.

## PRAYER FOR RELIEF

I, Amberley Mae Lambert, pray that the defendants be cited to appear and answer, after due proceedings, a judgment be rendered in its favor against the defendants, and that the plaintiff be awarded damages for all relief enumerated in this action and prayer.

Respectfully Submitted, by Amberley Lambert, a citizen of the United States in Polk County Texas.

Dated: April 1, 2021     Signed by: *Amberley Lambert*

ADDRESS:     1062 Hanson Rd. Onalaska, Tx 77360
TELEPHONE:   281-432-8260
EMAIL :      amberley.lambert2@gmail.com