IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| AMBERLEY LAMBERT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:23-CV-67-MJT-CLS |
| | § | |
| CITY OF ONALASKA, TEXAS, | § | |
| ONALAKSA POLICE DEPARTMENT, | § | |
| ONALASKA ELEMENTRY SCHOOL | § | |
| and TAMMIE HEETH, | § | |
| | § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (Doc. #28)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. See 28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72. Pending before the court is Defendants' Partial Motion to Dismiss Pursuant to Rule 12(b)(6). (Doc. #28.) After review, the undersigned recommends conditionally granting, in part, and denying, in part, the motion.

**I.    Background**

While dropping her daughters K.M. and N.M. off at Onalaska Elementary School on March 30, 2021, Plaintiff alleges she had problems with the school's resource officer, Defendant Tammie Heeth, who monitored the traffic flow in front of the school. (Doc. #17 at 8.) Plaintiff alleges these problems were part of a broader pattern of Defendant's Heeth behavior towards Plaintiff and other parents at the school. (*Id.*) Accordingly, Plaintiff made a verbal complaint about Defendant

Heeth to Assistant Principal Larissa Grubbs. (*Id.*) Assistant Principal Grubbs was allegedly very kind and understanding of Plaintiff's concerns, and suggested Plaintiff enter the school zone from another driveway to avoid Defendant Heeth. (*Id.*) Plaintiff contends, however, that her car could not make the turn into the other driveway, as it was not designed to accommodate traffic coming from that direction. (*Id.*)

Two days later, on April 1, 2021, Plaintiff, with her children in the car, was driving up to the school. (*Id.* at 9.) According to the complaint, Defendant Heeth, who was directing traffic at her regular location, stepped out in front of Plaintiff's car, causing Plaintiff to stop in the middle of the road. (*Id.*) Plaintiff allegedly rolled down her window to figure out what was going on, at which point Defendant Heeth allegedly grabbed Plaintiff's hair and attempted to pull her out of the car through the window. (*Id.*) After the physical altercation ended, Plaintiff alleges Defendant Heeth falsely accused Plaintiff of hitting Defendant. (*Id.* at 10.) Plaintiff called 9-1-1 and waited in her vehicle as officers from Onalaska Police Department—Defendant Heeth's employer—arrived. (*Id.* at 11.) Polk County Fire Marshal Jacob Chapman, one of the individuals who arrived to the scene, informed Plaintiff that Defendant Heeth was arresting Plaintiff for aggravated assault against a public servant and resisting arrest. (*Id.*) Marshal Chapman then handcuffed Plaintiff and escorted her to Defendant Heeth's patrol car. (*Id.*)

Plaintiff was subsequently charged with aggravated assault against a public servant and resisting arrest, but the former claim was dismissed for insufficient evidence, and, for the latter, Plaintiff was found not guilty by a jury on August 22, 2023. (*Id.* at 13.) Since the incident on April 1, 2021, Plaintiff alleges the City of Onalaska ("Defendant City") was slow to investigate complaints against Defendant Heeth, ignored and tried to hide complaints about Defendant Heeth

lodged by community members, and allowed Defendant Heeth to be part of the investigation into her own alleged misconduct, ratifying Defendant Heeth's behavior. (*Id.* at 14-17.)

On April 3, 2024, Plaintiff originally proceeding *pro se*, filed the instant suit. (Doc. #1.) Having since retained counsel, Plaintiff filed her operative, amended complaint on September 29, 2023, in which she alleges the following the claims: (1) Defendant Heeth violated Plaintiff's First Amendment rights by retaliating against her for lodging a complaint against Defendant Heeth to Assistant Principal Grubbs, (2) Defendant Heeth violated Plaintiff's Fourth Amendment right to be free from unlawful seizure, (3) Defendant City of Onalaska has *Monell* liability for these alleged rights violations, as it (a) promulgated unconstitutional policies, practices, or customs, (b) failed to properly train its officers, (c) falsely arrested Plaintiff, (d) and ratified Defendant Heeth's unconstitutional conduct. (Doc. #18. at 17-26.) On December 12, 2023, Defendants filed their Partial Motion to Dismiss Pursuant to Rule 12(b)(6). (Doc. #28.) A response and reply have been filed. (Docs. #29, #30.) The matter is now ripe for review.

**II.     Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient facts, which accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge & Dock Co. LLC v. Louisiana*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) must be read in tandem with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 555.  To decide whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Great Lakes Dredge*, 624 F.3d at 210.  However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  The inquiry focuses on the allegations in the pleadings and not on whether the plaintiff has sufficient evidence to succeed on the merits. *Ackerson v. Bean Dredging*, LLC, 589 F.3d 196, 209 (5th Cir. 2009).

**III.   Discussion**

In their Partial Motion to Dismiss, Defendants ask the court to dismiss the following claims pursuant to Rule 12(b)(6): (1) Plaintiff's First Amended retaliation claim against Defendant Heeth, (2) Plaintiff's municipal liability claims against Defendant City.[1]  (Doc. #28.)  The undersigned will address each argument in turn.

    A.   <u>First Amendment Retaliation Claim</u>

To state a retaliation claim under the First Amendment, a plaintiff must plead "(1) they were engaged in constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d

---

[1] For clarity, the undersigned notes that the only claim unaddressed by this instant motion is Plaintiff's §1983 claim against Defendant Heeth for allegedly violating her constitutional rights under the Fourth Amendment.

785, 807 (S.D. Tex. 2012) (citing *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005)). Defendants argue that Plaintiff does not plead she was engaged in a protected activity because she failed to plead "she actually made a complaint about Officer Heeth, and she fails to provide the content of the alleged complaint," and is, therefore, unable to plead that speech motived Defendant Heeth's actions. (Doc. #28 at 5-6.) A formal complaint, however, is not the only constitutionally protected activity cognizable under a First Amendment retaliation claim. *See, e.g.*, *Clary v. Irvin*, 501 F. Supp. 706, 712 (E.D. Tex. 1980) (finding a police officer had a First Amendment right to privately criticize the police chief without retaliation); *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 511-14 (5th Cir. 1999)) (referencing a successfully plead retaliation claim based in the right of a local politician "to criticize police officials")

Plaintiff properly stated a First Amendment retaliation claim. First, Plaintiff's complaint alleges that on March 30, 2021, she made a "verbal complaint about Defendant Heeth" to Assistant Principal Larissa Grubbs. (Doc. #17 at 8.) The right of a private citizen to criticize a police officer, regardless of the form of that criticism, is well established. *See Ordonez et al. v. Gonzales et al.*, No. EP-23-CV-99-KC, 2024 WL 1250181, at *23-24 (W.D. Tex. Mar. 25, 2024) (finding there is a well-established right to criticize a police officer to his face). Second, Plaintiff alleges she was assaulted, arrested, and prosecuted, and that her property was damaged (doc. #17 at 5-10), which meets the pleading requirements of the second element of a retaliation claim. *See, e.g.*, *Kokesh v. Curlee*, 14 F.4th 382, 396 (5th Cir. 2021) (noting a retaliatory arrest is an injury under a retaliation claim); *Ybarra v. Davis*, 489 F. Supp. 3d 624, 630–32 (W.D. Tex. 2020) (holding that a plaintiff was injured for the purposes of a retaliation claim when they were physically grabbed and injured). Third, Plaintiff alleges that two days after her complaint about Defendant Heeth to the Assistant Principal, Defendant Heeth, without provocation, stopped Plaintiff's car in the middle of the road,

5

and then attacked and arrested Plaintiff. (Doc. #17 at 9.) The timing of events allows one to reasonably infer at the pleading stage that Defendant Heeth's actions were substantially motivated by Plaintiff's complaint. *See Hays v. LaForge*, 113 F. Supp. 3d 883, 904 (N.D. Miss. 2015) (citing *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013)) (noting the third element of a retaliation claim can be "satisfied when the plaintiff relies upon a chronology of events from which retaliation may plausibly be inferred"). The motion to dismiss should be denied as to Plaintiff's retaliation claim against Defendant Heeth.

### B. Municipal Liability Claims

To state a municipal liability claim against a city, a plaintiff "must plead facts that plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)). "[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bryan County v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiff asserts four theories of municipal liability. First, Plaintiff contends Defendant City had unconstitutional policies that caused violations of her constitutional rights. (Doc. #17 at 24.) Second, Plaintiff argues that City Defendant failed to adequately train, supervise, or discipline its officers as to First and Fourth Amendment constitutional rights. (*Id.* at 21-23.) Third, Plaintiff asserts Defendant City ratified Defendant Heeth's unconstitutional actions. (*Id.* at 23-26.) Finally, Plaintiff contends Defendant City falsely arrested Plaintiff. (*Id.* at 25.) The undersigned will address each theory in turn.

i. Claims Based on Unconstitutional Policies

As a threshold matter, Plaintiff's complaint is relatively unclear as to what unconstitutional policies are at issue. Buried in her amended complaint, Plaintiff refers to a "City policy, practice, and custom that prohibits and criminalizes First Amendment activity directed toward its police officers." (Doc. #17 at 24.) The only other specific policies, practices, or customs referenced are Defendant City's alleged failure to train its officers and its alleged ratification of Defendant Heeth's actions, both of which are addressed below. To the extent that Plaintiff intended to challenge any other city policy, custom, or practice under §1983, she has not plead any specific policy. For clarity, the undersigned will first address Plaintiff's *Monell* claims based on unconstitutional policies generally and then the specific alleged policy of criminalizing First Amendment speech.

a. All Non-Specified City Policies, Practices, or Customs

In response to Defendant's argument that she fails to properly plead any specific policies, Plaintiff cites *Thomas v. City of Galveston* to support the proposition that at the motion to dismiss stage, she is allowed to plead a "more general" allegation for a *Monell* claim due to her lack of access to information about Defendant City's internal processes. (Doc. #29 at 7-8.)

In *Thomas v. City of Galveston*, a court dismissed a plaintiff's *Monell* claims where he provided "only generic, boilerplate recitations of the elements of claims" and failed to provide "at least minimal factual allegations regarding the city's liability that go beyond generic restatements of the elements of such a claim." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011). However, the court made it clear that a plaintiff was not required to plead an exact policy, and that even allegations of "general facts which point to prior violations by the police department would allow the [plaintiff] to survive the motion to dismiss phase." *Thomas*, 800 F.

7

Supp. 2d at 843 (quoting *Hobart v. City of Stafford*, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010). Accordingly, a plaintiff's claim that a city "adopted or maintained unconstitutional policies with deliberate indifference to their known or obvious consequences" can survive a motion to dismiss where the plaintiff alleges an officer had "a long history of prior incidents involving misuse of force and mistreatment and violation of citizens' rights." *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 373 (E.D. La. 2016).

In rare cases where a plaintiff is "unable to show a pattern of constitutional violations," she "may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (internal quotations omitted). This exception, however, is narrow and "will apply only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.*

Here, Plaintiff's complaint references "Defendant Heeth's ongoing conflicts with other parents" and a "number of complaints" to Defendant City about Defendant Heeth filed by Ms. Rosemary Covalt. (Doc. #17 at 9, 14-15.) Plaintiff's complaint, however, does not contain any references to prior First or Fourth Amendment violations by Defendant Heeth or other city officers. Additionally, if various parents had complained about Defendant Heeth before without facing retaliation, such a constitutional violation was not, by definition, "highly predictable," rendering the single incident exception inapplicable. Accordingly, the court should dismiss Plaintiff's *Monell* claims based on alleged policies that are not specified in her amended complaint.

b.  Defendant City's Alleged Policy of Criminalizing Speech Against its Officers

Defendants argue that Plaintiff failed to plead any official unconstitutional city policies, nor any unconstitutional pattern or practice by way of deliberate indifference. (Doc. #28 at 7-9.) Plaintiff, however, does plead, albeit in a conclusory fashion, that Defendant City has an unwritten "policy, practice, and custom that prohibits and criminalizes First Amendment activity directed toward its police officers." (Doc. #17 at 24.) To state a §1983 claim under *Monell* for such a practice, however, a complaint must allege that the policymaker was deliberately indifferent to the deprivation of constitutional rights. The facts plead do not suggest who the policymaker is and, as explained above, the complaint does not suggest that any policymaker was deliberately indifferent to First Amendment rights. The court should dismiss this *Monell* claim under Rule 12(b)(6).

ii. Failure to Train, Supervise, or Discipline Claim

To state a failure to train, supervise, or discipline claim, Plaintiff must plead (1) the city failed to train, supervise, or discipline the officers involved, (2) there is a causal connection between the alleged failure to train, supervise, or discipline and the alleged violation of the plaintiff's rights, and (3) the failure to train, supervise, or discipline constituted deliberate indifference to the plaintiff's constitutional rights. *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001); *Vess v. City of Dallas*, 608 F. Supp. 3d 434, 455 (N.D. Tex. 2022).

Plaintiff argues Defendant City failed to adequately train, supervise, or discipline its officers on the topic of First and Fourth amendment rights, as evidence by the alleged prior complaints against Officer Heeth or, in the alternative, the extreme nature of the single incident

9

which involved Plaintiff and Officer Heeth. (Docs. #17 at 21-23, #29 at 9-9.) As explained the above, the prior alleged complaints against Defendant Heeth are not specific and do not appear to be about constitutional rights violations by Defendant Heeth, meaning there is no alleged pattern of constitutional violations, nor reason to apply the single incident exception. Without more, a general conclusion that Defendant City failed to train its officers "is not enough to imply or state that policymakers acted with deliberate indifference." *Armstrong*, 60 F.4th at 277. Accordingly, Plaintiff's municipal liability claims based on a failure to train, supervise, or discipline theory should be dismissed for failure to state a claim.

      iii.   Ratification Claim

Next, Defendant City argues that Plaintiff fails to state a *Monell* claim based on Defendant City's alleged ratification of Defendant Heeth's actions. (Doc. #28 at 10-11.) Under a ratification theory, a municipality may have liability for its employee's violations of one's constitutional rights in the limited situation when "a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies," and "policymakers approve a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); *see generally Taylor v. Hartley*, 488 F.Supp.3d 517, 536-37 (S.D. Tex. 2020) (explaining ratification theory and collecting cases).

Courts in this circuit have recognized that "the precise standard by which to plead a ratification theory is somewhat unclear." *Garcia v. Harris County*, No. 4:23-CV-0542, 2024 WL 1291531, at *6 (S.D. Tex. Mar. 26, 2024) (quoting *Taylor*, 488 F.Supp.3d at 537). For a ratification theory claim to apply at all, however, a "clear prerequisite is knowing approval by a policymaker of both conduct and its underlying, improper basis." *Taylor*, 488 F. Supp. 3d at 537.

Courts have also required the conduct at issue be "manifestly indefensible" or involve "extreme factual situations." *Id.*

Plaintiff argues she states a ratification claim because she alleges that "[d]espite a history of complaints made against Defendant Heeth, the Police Chief had an unspoken policy of allowing her to manage and resolve her own complaints." (Doc. #29 at 10.) The Fifth Circuit has held a ratification claim under §1983 survives a motion to dismiss where the plaintiff alleges a police chief failed, as a policymaker, to intervene and stop an officer from covering up evidence in an investigation into that officer, as that officer. *Covington v. City of Madisonville*, 812 F. App'x 219, 229 (5th Cir. 2020). Plaintiff's complaint, however, merely alleges Defendant Heeth was part of the investigation into herself. This allegation does not rise to the level required to apply ratification theory, nor does Plaintiff allege who is the relevant policymaker.[2] The Court should, therefore, dismiss Plaintiff's *Monell* claims that are based on a theory of ratification.

    iv. <u>False Arrest Claim</u>

Finally, Plaintiff asserts Defendant City should be liable for Defendant Heeth's alleged false arrest of Plaintiff because "Defendant City stood behind Officer Heeth and upheld the arrest even though they knew the initial stop and follow on arrest were unlawful." (Doc. #17 at 25.) Defendant argues this claim should be dismissed as Plaintiff fails to plead a practice, policy, or custom of the city. (Doc. #28 at 12.) To the extent this false arrest claim against Defendant City is a reiteration of Plaintiff's ratification claim, it should be dismissed for the reasons explained above. As a stand alone claim under *Monell*, this false arrest claim should likewise be dismissed as Plaintiffs fails to plead a policy, a policymaker who had actual or constructive knowledge, and

---

[2] Even though Plaintiff references Onalaska Police Chief Jessica Stanton, the complaint does not clearly allege who is the relevant policymaker for this alleged policy. The complaint refers to "The City and its Policymakers" at various points, and separately mentions Police Chief Stanton. Nowhere does Plaintiff plead who exactly is the policymaker which is required to succeed on a municipal liability claim.

that the policy was the moving force behind the constitutional violation. *See Evans v. City of Meridian*, 630 F. App'x 312, 314-15 (5th Cir. 2015) (applying the *Monell* framework to a false arrest claim against a city).

  C. Plaintiff's Alternative Requests

As an alternative to dismissal, Plaintiff requests leave to amend her complaint or that the court hold in abeyance Defendant City's Partial Motion to Dismiss to allow Plaintiff to conduct limited discovery. (Doc. #29 at 10.) After review, the undersigned finds granting Plaintiff leave to amend her complaint to be appropriate to address the pleading deficiencies in Plaintiff's complaint. However, Plaintiff is only granted leave to amend her complaint in order to plead facts that support the requisite elements of municipal liability as articulated in this Report and Recommendation. Plaintiff should file an amended complaint within twenty-one days of any order adopting this Report and Recommendation.

**IV. Conclusion**

The undersigned finds that Plaintiff properly stated a First Amendment retaliation claim against Defendant Heeth but failed to state any proper claims against Defendant City. The undersigned, however, finds it appropriate to give Plaintiff leave to amend her complaint for the purpose of pleading facts to establish the elements of municipal liability.

**V. Recommendation**

Defendant's Partial Motion to Dismiss (doc. #28) should, therefore, be **DENIED** as to Plaintiff's First Amendment Retaliation claim against Defendant Heath, and **CONDITIONALLY GRANTED** as to all of Plaintiff's municipal liability claims pending amendment of her complaint. Plaintiff should have twenty-one ("21") days from any order adopting this Report and Recommendation to amend her complaint.

## VI. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Without leave of court, objections are limited to **eight (8) pages**. E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 3rd day of April, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE